an undertaking to pay any judgment ultimately recovered in the Municipal Court. Such injunction was refused, and we think improperly.

While it is true that this plaintiff, as defendant in the action for rent in the Municipal Court, could set up the defense of fraud, complete relief could not be given him in that court. The Municipal Court would have no jurisdiction to declare the lease void and order its cancellation. The plaintiff sets forth facts in his complaint which, if satisfactorily established, may entitle him to a cancellation of the lease. If the lease shall be declared void, such a decree would end all controversy. Although a judgment in the Municipal Court in favor of the present plaintiff might be a bar to the recovery of future installments of rent, it would not prevent the bringing of actions thereafter in which such defense must be pleaded. Inasmuch as the present action will determine the entire controversy between the parties, we are of the opinion that the Municipal Court action for rent should be stayed until the determination of the present action. The plaintiff, however, should give a proper undertaking, conditioned, in case he shall not be successful in obtaining a cancellation of the lease, to pay all rent due or to become due thereon.

On the giving of such an undertaking, to be approved by a justice of the Supreme Court, the order appealed from is reversed, with $10 costs and disbursements, and the motion for an injunction, staying the prosecution of the Municipal Court actions, granted, without costs.

INGRAHAM and LAUGHLIN, JJ., concur.

CLARKE, J. I dissent. The allegations of fraud in the making of the lease, if sustained, would be a complete defense in the action for rent. There is, therefore, no necessity for an action in equity to procure the cancellation of the lease. If a dissatisfied tenant is entitled to enjoin the prosecution of an action for rent, an unnecessary and intolerable burden will be imposed upon property holders in this city.

The order appealed from should be affirmed, with $10 costs and disbursements, and the motion for an injunction denied, with $10 costs.

SCOTT, J., concurs.

(61 Misc. Rep. 518.)

HYDE et al. v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES et al.

(Supreme Court, Special Term, New York County. December, 1908.)

1. INSURANCE (§ 36*)—STOCK COMPANIES—INVESTMENTS—RIGHT TO QUESTION.
Whether an investment by an insurance company in the stock of a bank is authorized or not can be inquired into by the state alone.
[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 36.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CORPORATIONS (§ 377*)—RIGHT TO HOLD STOCK IN ANOTHER CORPORATION.**

A corporation may take the stock of another corporation in payment of a debt.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1533; Dec. Dig. § 377.*]

**3. CORPORATIONS (§ 389*)—RIGHT TO HOLD STOCK OF ANOTHER CORPORATION.**

It will not be assumed that stock held by one corporation in another was acquired ultra vires or unlawfully.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 389.*]

**4. FRAUDS, STATUTE OF (§ 21*)—ORIGINAL OR COLLATERAL PROMISE.**

An agreement to indemnify the guarantors of an indebtedness incurred by another for the accommodation of the indemnitor is not within the statute of frauds, and not required to be in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 33; Dec. Dig. § 21.*]

**5. GUARANTY (§ 100*)—RIGHTS OF GUARANTOR—INDEMNITY.**

A person for whose accommodation an indebtedness has been guaranteed will be held to have impliedly agreed to indemnify the guarantors.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 100.*]

**6. CORPORATIONS (§ 370*)—POWERS AND LIABILITIES IMPLIED.**

A corporation, when acting within the scope of its powers, is subject to the same implications in consequence of its acts as an individual would be.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 370.*]

**7. INSURANCE (§ 36*)—COMPANIES—POWERS—ULTRA VIRES—ESTOPPEL.**

Where an agreement by an insurance company to indemnify the guarantors of an indebtedness incurred by another for its accommodation impinged no public interest, was made for the benefit of all the stockholders and policy holders, and offended no rule of public policy, the company's acceptance and retention of the advantages of the guaranty and the guarantors' assumption of liability on the faith of the promise of indemnity estop the company from setting up that its promise was ultra vires.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 36.*]

**8. CORPORATIONS (§ 316*)—DIRECTORS—TRANSACTIONS WITH CORPORATION—VALIDITY.**

An agreement by a corporation to indemnify the guarantors of an indebtedness incurred by another for the accommodation of the corporation is not void because some of the guarantors were directors of the corporation, but at most voidable.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 316.*]

**9. CONTRACTS (§ 98*)—VOIDABLE CONTRACTS—EFFECT.**

An agreement that is voidable, and not void, is to be given effect until disaffirmed.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 98.*]

**10. CORPORATIONS (§ 434*) — POWERS AND LIABILITIES — DUTY TO PROTECT ASSETS.**

The duty of a corporation to preserve its assets exists, irrespective of whether their original acquisition was authorized.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 434.*]

**11. INSURANCE (§ 36*)—POWERS—IMPLIED POWERS—BORROWING MONEY.**

A life insurance company has implied power to borrow money to preserve its assets, and, having the authority, its choice of a means, where neither corrupt nor prohibited, presents no question for judicial interference.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 36.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. GUARANTY (§ 99*)—RIGHTS AND REMEDIES OF GUARANTOR—ACTIONS AGAINST PRINCIPAL.

> An insurance company obtained loans from a bank, to secure the payment of which it pledged another's note, with a guaranty by others of its payment; the maker, as well as the guarantors, having severally assumed their respective obligations for the accommodation of the insurance company, and on its promise to indemnify them against loss. The insurance company refused to pay the loans at maturity, and the maker of the note pledged was financially irresponsible, and the guarantors were sued, apart from the insurance company, and the coercion of payment by the insurance company was controlled and delayed by the bank. *Held*, that equity would require the insurance company to pay the loans and exonerate the guarantors, and would enjoin the bank from proceeding against the guarantors primarily; security being given to protect the bank against loss from delay.
>
> [Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 99.*]

Action by James Hazen Hyde and another, as trustees under the will of Henry B. Hyde, deceased, and others, against the Equitable Life Assurance Society of the United States and others. Motion for an injunction pendente lite. Motion granted.

Franklin Pierce, Martin Conboy, and Chanler W. Riker, for plaintiff Coler.

Lawrence Greer and F. C. Nicodemus, Jr., for plaintiffs Hyde and another.

Cephas Brainerd and H. A. Cushing, for plaintiffs Hartley and others.

Gifford, Hobbs & Beard, for plaintiff Searles.

Francis Lynde Stetson and George H. Gardiner, for defendant Mercantile Trust Company.

Paul D. Cravath, for defendant Equitable Life Assur. Society.

BISCHOFF, J. The action is to secure the exoneration of the plaintiffs Fitzgerald, Coler, and Searles, and the testators, respectively, of the remaining plaintiffs, as guarantors of loans made nominally to the defendant Turner; their liability upon the guaranty having been assumed upon the promise of the defendant the Equitable Life Assurance Society, acting by the executive committee of its board of directors, to indemnify and to save them harmless therefrom. The loans were made by the Mercantile Trust Company to Turner, its employé, for the accommodation of the society; and the plaintiffs ask that the latter, as the principal debtor, being solvent and able so to do, be compelled to repay the moneys advanced, to avoid irreparable injury to themselves. Suits upon the guaranty have been brought against the plaintiffs Fitzgerald, Coler, and Searles, and the beneficiaries of the estates of the deceased guarantors; and the present motion is to restrain the prosecution of these suits by the defendant the Mercantile Trust Company pending the determination of this action. The society was not made a party to the suits against the guarantors, and it is alleged that the prosecution of an earlier action by the trust com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany against it as sole defendant is not in good faith and is being intentionally delayed; both corporations being under the control of practically the same individuals.

The society is a stock corporation doing life insurance business, organized under Laws 1853, p. 887, c. 463, now repealed by the insurance law of 1892 (Laws 1892, p. 2038, c. 690, § 290); the Mercantile Trust Company being a corporation organized under the banking laws of this state. In 1894 the society had acquired a controlling number of the shares of the capital stock of the Western National Bank, organized under the laws of Congress. Whether this investment was authorized or not is not a question germane to the present inquiry, since it affects the state only. Reynolds v. First National Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317. For the present purposes it suffices that the investment, at the times hereinafter mentioned, represented assets (Sistare v. Best, 88 N. Y. 527, 543; Hurd v. New York, etc., Steam Laundry Co., 167 N. Y. 89, 94, 60 N. E. 327; Milbank v. New York, L. E. & W. Co., 64 How. Prac. 20) which it was the duty of the society to preserve and protect. Besides, a corporation may take the stock of another corporation in payment of a debt (National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Holmes & Griggs M. Co. v. Holmes & Wessell N. Co., 127 N. Y. 252, 258, 27 N. E. 831, 24 Am. St. Rep. 448), and it will not be assumed that such stock was acquired ultra vires or unlawfully. (Evans v. Bailey, 66 Cal. 112, 4 Pac. 1089).

The bank had made a loan of a large amount to John W. Young and others, for which it held as collateral security stock in various enterprises as yet in a tentative state and awaiting development. Deeming the bank's capital to be impaired because of this loan, the Comptroller of the Currency determined to close the bank if the impairment was not made good; and this required either an assessment of the shareholders or payment of the loan. Unwilling to bear the loss which would directly result from an assessment, and apprehensive that such a course would be met by an impairment of the bank's credit and a depression of the stock, and so seriously lessen the latter's market value, the society resolved to take up the loan. To that end, it caused the trust company, which the society dominated by means of its control of a majority of the shares thereof, to advance the required amount to Turner upon the latter's note and the collaterals to be transferred. At the same time the society appointed a committee, consisting of Henry B. Hyde, Marcellus Hartley, Louis Fitzgerald, John E. Searles, and William N. Coler, Jr., to secure the care and protection of the collaterals. Of these, Hyde, Hartley, and Fitzgerald were directors of the society and members of the executive committee of the board. Hyde was also the president of the society and the holder of a majority of its capital stock. He died in May, 1899, and Hartley, in 1902, each leaving a last will and testament under which their respective estates have been distributed. Hyde, Hartley, and Fitzgerald were furthermore directors of the trust company, of which the latter was also the president. Searles and Coler were members of the bank's board of directors.

Some time after the loan was transferred to the trust company, the State Superintendent of Banks manifested his disapproval of Turner's financial sufficiency and of the adequacy of the collaterals; the loan itself having been at various times increased at the request of the society, and the later advances being required to nurture the enterprises represented by the collaterals. To meet the objections of the Superintendent of Banks, and to induce the trust company to extend the time of the loan, the persons comprising the committee hereinbefore referred to, at the request of the society, acting through the executive committee of its board of directors, and upon its promise to indemnify and save them harmless therefrom, each entered into a written guaranty to the trust company of the payment of the loan to Turner and of such further advances as might from time to time be made to him with their approval. It is alleged for the plaintiffs that at this time it was understood by and between the guarantors, the society and the trust company, whether orally or in writing does not appear, that the guaranty would not be resorted to or enforced in any event. From time to time thereafter the enterprises represented by the collaterals were in need of additional financial aid, and, at the society's solicitation, with the intention of preserving the collaterals, further sums were advanced by the trust company, ostensibly to Turner, and with the approval of the guarantors, and at the time of the institution of the trust company's suits against the guarantors the aggregate of the loans had reached a sum considerably in excess of $2,000,000. Since Hyde's death the personnel of the society's board of directors has materially changed, and the persons now in charge of the society's affairs question the validity of its agreement for indemnity of the guarantors. As already stated, the trust company has brought suit against the surviving guarantors and the beneficiaries of the estates of those who have died for repayment of the loans; and the defendants in these suits are herein united as plaintiffs.

Obviously, the constitutive facts of the plaintiffs' right to the relief sought are their liability, directly or devolved, as guarantors of the Turner loans, and the society's agreement of indemnity. If there is no enforceable guaranty, or no enforceable agreement of indemnity, the action must fall, and with it the plaintiffs' prayer for injunctive relief. I must assume, therefore, that what is said about an understanding with the trust company to the effect that the guaranty would not be enforced has reference to an oral agreement, which is unavailable to the plaintiffs because in conflict with their written obligation (Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961), and that mention of it was intended to be taken merely as tending to show that the plaintiffs' success in this action would not visit the trust company with any serious disappointment, since it would only be in harmony with its actual agreement, and that the oral agreement is not alluded to as in any way controlling of the legal rights of the parties. The oral agreement is, therefore, to be treated as negligible, since, if there was a valid agreement not to enforce the guaranty, it would be an effective defense to the trust company's action. Not only, therefore, would the plaintiffs, in that case, have an adequate defense at law, which would deprive them of their

locus standi in a court of equity, but the assertion of a valid defense to the guaranty would negative the existence of a constitutive of the present action, the plaintiffs' liability to the trust company, the sine qua non of their right to ask exoneration by the society. Necessarily, therefore, and consistently with what must be the plaintiffs' attitude for the purposes of this action, I am to regard their liability upon the guaranty to the trust company as conceded, and am to inquire only whether there was a valid and enforceable agreement by the society with the guarantors to save them harmless from loss by reason of the liability assumed by them. No formal agreement in writing to that effect is submitted; but that there was an express understanding of indemnity appears from the affidavit of the plaintiff Fitzgerald, and the minutes and resolutions of the executive committee of the society's board of directors. It was not within the statute of frauds, and, therefore, not required to be in writing. Sanders v. Gillespie, 59 N. Y. 250; Smart v. Smart, 97 N. Y. 559. Furthermore, an agreement to indemnify the guarantors is implied because of the accommodation character of the transaction. 1 Am. & Eng. Ency. of Law (2d Ed.) 350, and cases cited in notes. Such implications apply to corporations, as well as individuals. 10 Cyc. 1034, 1099.

It is urged, however, that the agreement was void, firstly, because three of the guarantors, Messrs. Hyde, Hartley, and Fitzgerald, were members of the society's board of directors and executive committee, and, therefore, disqualified from entering into any agreement in the society's behalf with themselves; and, secondly, because it was ultra vires—that is, beyond the society's contractual power. To this last objection it might be answered that, since the agreement impinged no public interest, since it was made for the benefit of all of the stockholders and policy holders of the society, and since it offended no rule of public policy, and was neither malum in se nor malum prohibitum, the society's acceptance and retention of the advantages of the guaranty, and the guarantors' assumption of liability on the faith of its promise of indemnity, will effectually estop the society from now questioning its power to give that promise (Vought v. Eastern Bldg. & Loan Ass'n, 172 N. Y. 506, 65 N. E. 496, 92 Am. St. Rep. 761; Seymour v. Spring Forest Com. Ass'n, 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859; Linkauf v. Lombard, 137 N. Y. 417, 33 N. E. 472, 20 L. R. A. 48, 33 Am. St. Rep. 743; Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664); but I incline to the view that the agreement of indemnity was voidable, at most, by the society (that is to say, by the corporation as distinguished from its managers), that it was affirmed by the corporation, and that it was within the society's incidental powers, intra vires, and operative.

It has been held that a director may lawfully provide for indemnity against loss to himself resulting from the use of his credit by and for the benefit of the corporation (Sanford Fork & Tool Co. v. Howe, Brown & Co., 157 U. S. 319, 15 Sup. Ct. 621, 39 L. Ed. 713), and it is authoritatively settled that a contract in behalf of the corporation, made by the directors or trustees thereof with themselves, is not void, but is at most voidable at the election of the corporation (Skinner v. Smith,

134 N. Y. 240, 31 N. E. 911). In the absence of a fraud upon the corporation or oppression of its stockholders, this right of avoidance is in the holders of a majority of the shares of capital stock. "To warrant the interposition of the court in favor of the minority stockholders * * * as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests. Otherwise the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow." Gamble v. Queens Co. W. Co., 123 N. Y. 91, 99, 25 N. E. 201, 202, 9 L. R. A. 527. In the case last cited, the contract being viewed as one intended for the benefit of all the stockholders, it was held that its approval by the holder of a majority of the shares of stock, who was also the contracting director, was conclusive upon the corporation.

The situation in the case at bar is not dissimilar. When the agreement of indemnity was entered into, Henry B. Hyde, one of the guarantors, was the society's president and a member of its board of directors. He was also the holder of a majority of the shares of its capital stock. The only apparent motive for the agreement was to continue the loan made, in effect, to the society, to save it—that is to say, the corporation, comprehending all of its members alike—from a threatened loss because of the society's ownership of the bank stock, and to secure additional loans required to protect the collaterals upon which the society was forced to rely for reimbursement, at least to some extent, of the sum or sums advanced at its request. Later developments may have proved the society's course in taking up the loan held by the bank an unwise one; but the circumstances surrounding the making of the agreement of indemnity not only repel every inference of any intentional unfairness toward the corporation or any of its stockholders, but tend rather to show that the directors of the society were actuated solely by a desire to benefit all of its stockholders. It may now appear that it would have been less costly, had the society submitted to the assessment of its bank shares. Its want of prescience, however, does not impugn its good faith. "Wisdom born after the event is the cheapest of all wisdom. Anybody could have discovered America after 1492." Brewer, J., in United States v. Bell Tel. Co., 167 U. S. 261, 17 Sup. Ct. 809, 42 L. Ed. 144.

Approval of the agreement of indemnity, whether express or as arising from the fact that the guaranty was entered into at the request of and for the accommodation of the society, involved nothing

more than an exercise of discretion, a right reserved to each of a number of associates in any corporate or partnership enterprise. Hyde's active participation in his promise of indemnity, express or implied, can reasonably be given no other effect than that he, the majority stockholder, elected to abide by it. See, also, H. W. T. Co. v. Beatty, L. R., 12 App. Cas. 589; Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 320, 30 N. E. 667, 33 Am. St. Rep. 315, 322; Continental Insurance Co. v. N. Y. & H. R. R. Co., 187 N. Y. 225, 79 N. E. 1026; Burden v. Burden, 159 N. Y. 287, 54 N. E. 17; Farmers' L. & T. Co. v. New York & North. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; Wallace v. Long Island R. R. Co., 12 Hun, 460; Hart v. Ogdensburgh & L. C. R. R. Co., 89 N. Y. 316, 35 N. Y. Supp. 566. The approval of the agreement of indemnity may furthermore be said to be inferable from the fact that it does not appear that the society, the corporation, or any of its members, at any time, repudiated it, which could only have been done upon making restitution; that is to say, by securing to the guarantors the cancellation of their obligation as such. Duncomb v. New York & N. H. R. R. Co., 84 N. Y. 190. And, if the omission of repudiation falls short of an election to affirm the agreement of indemnity, it remains to be said that, since the agreement is voidable, and not void, it is to be given effect until it is disaffirmed. Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 26 N. E. 145.

No express power to borrow money was given to a life insurance corporation by Laws 1853, p. 887, c. 463, p. 1029, c. 551; neither was it prohibited. Section 2 of the stock corporation law of 1892 (Laws 1892, p. 1824, c. 688), whereby the power is given to stock corporations generally, does not apply to moneyed corporations, the latter class of corporations being defined to be these formed under or subject to the banking or insurance law (General Corporation Law 1892 [Laws 1892, p. 1802, c. 687] § 3); and General Corporation Law, § 10, denies to all corporations all powers not expressly conferred, and such implied or incidental powers as are not necessary to the powers expressly conferred. This leads to the inquiry whether, at the time of the loan to Turner, the society was authorized to borrow as necessarily incidental to the proper performance of the duties imposed upon it by law.

It goes without saying that the society was bound to maintain and preserve its capital and surplus for its stockholders, and that it was under a like duty to preserve its solvency and financial security for its policy holders is no less indisputable. Attorney General v. Guardian Mutual Life Ins. Co., 82 N. Y. 336; People v. Empire Mutual Life Ins. Co., 92 N. Y. 105; Lovell v. St. Louis Mut. Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423. Having acquired the bank stock, and the same having become a part of its assets, the society was bound to take all reasonable means to preserve it and to protect it against loss or depreciation. Such being its duty, its authority to act is apparent: The latter necessarily proceeds from the former. A duty without authority to perform it involves a solecism. The imposition of the one must needs beget the other. The choice of the means of performance, when not malum in se or malum prohibitum, in-

volves but the exercise of that discretion which, so far as concerns the management of its internal affairs, is a part of the society's autonomy, without which it could not exist. The society was not authorized to borrow money generally, or for purposes other than its life insurance business; but, when borrowing as a means of preserving its assets, it was acting legitimately—that is to say, within its implied or incidental authority to respond to the duties imposed upon it by law. It matters not in what form it borrowed, so long as the loan was one to the society for a legitimate purpose; and it cannot be reasonably gainsaid that the loan to Turner for its accommodation was essentially a loan to the society. The society was eventually, and is finally, to repay the amount; and thus, toward Turner and his guarantors, it stood in the relation of principal debtor. Having authority to borrow for the particular purpose, its choice of a means, neither corrupt nor prohibited, presents no question for judicial interference. "If the means employed are reasonably adapted to the ends for which the corporation was created, they come within its implied or incidental powers, although they may not be specifically designated by the act of incorporation." 10 Cyc. 1097.

That the power to borrow money, when necessary to its existence, or to enable it to perform its duties, is within the incidental powers of a corporation, when not prohibited, was ruled in Barry v. Merchants' Exchange Company, 1 Sandf. Ch. 280, 289, cited with approval in Curtis v. Leavitt, 15 N. Y. 9, 62. In Furniss v. Gilchrist, 1 Sandf. 53, as well as in Orr v. Mercer Co. Mut. Fire Ins. Co., 114 Pa. 387, 6 Atl. 696, it was held competent to a fire insurance corporation, as within its incidental power, to borrow money to enable it to meet its indebtedness arising from an insurance loss. The exigencies which may invoke the exercise of the power, as well as the reasonableness of the choice of the means of its exercise, are aptly expounded by Judge Comstock in Curtis v. Leavitt, 15 N. Y. 64:

"It is truly said that corporations can only exercise such incidental powers as are necessary to carry into effect the express objects of their charters. But 'necessity' is a word of flexible meaning. There may be an absolute necessity, a great necessity, and a small necessity; and between these degrees there may be many others depending on the ever-varying exigencies of human affairs. It is plain that corporations, in executing their express powers, are not confined to means of such indispensable necessity that without them there could be no execution at all. The contrary doctrine would lead at once to a very great absurdity; for if there are several modes of accomplishing the end, neither one is indispensable, and each would exclude all the others. And thus, by inevitable logic, an express grant of power would lie dormant, because there are more modes than one of carrying it into execution. It is almost as difficult to say that the incidental power depends for its existence on the degree of necessity which connects it with the power in chief. Such a doctrine would impose upon the courts a never-ending difficulty, for the inquiry would always be whether the chosen instrumentality is the very best that could be selected, and if not the very best, however minute the difference may be, then the inevitable decision must follow that the choice was fatally bad, although strictly adapted to the end in view and made in the utmost good faith."

A summary of all the facts in evidence shows that the Equitable Life Assurance Society from time to time secured loans from the Mercantile Trust Company for purposes of its own to secure the pay-

ment of which it pledged Turner's note with the guaranty of the plaintiffs Fitzgerald, Searles, and Coler, and that of the testators, respectively, of the other plaintiffs, of the payment thereof, the maker as well as the guarantors having severally assumed their respective obligations at the request of and for the accommodation of the society and upon its promise, express or implied, to indemnify them against loss or liability; and the society, though financially able so to do, has refused to pay the debt at maturity. The maker of the note pledged to secure the loans is financially irresponsible, the guarantors thereof are sued apart from the society by the creditor to enforce their obligations, a recovery against them is inevitable, the result is fraught with irreparable mischief to and the probable financial ruin of the guarantors, and the coercion of payment by the principal debtor is controlled and delayed by the creditor. That under such circumstances a court of equity will interfere by requiring the principal debtor to pay the debt and thus cause the guarantors to be exonerated, and for that purpose will enjoin the creditor from proceeding against the guarantors primarily, security being given to protect the former against loss from delay, is well settled in principle and by authority. Sheldon, Subrogation (2d Ed.) § 133, and cases cited in notes; Thompson v. Taylor, 72 N. Y. 32; Hayes v. Ward, 4 Johns. Ch. 123, 8 Am. Dec. 554.

The motion for an injunction pendente lite is granted, with costs. The order to be entered hereon must be settled on notice and provide for security to the defendant the Mercantile Trust Company, the amount of which will be determined on the settlement of the order.

Ordered accordingly.