## Marvin, Banking Commissioner v. Kentucky Title Trust Company.

(Decided February 8, 1927.)

### Appeal from Franklin Circuit Court.

1. Banks and Banking—Bank May Not Establish Branch Bank.—A bank organized under laws of state has no right to establish branch banks.

2. Banks and Banking—Business of "Banking" is Having Place where Deposits are Received and Paid Out and Money Loaned on Security.—Having a place of business where deposits are received and paid out on checks and where money is loaned on security is substance of "business of banking."

3. Banks and Banking—Bank and Trust Company May Establish Additional Offices in Same City, where Deposits May be Made, Checks Cashed—"Banking" (Ky. Stats., Section 579).—Bank and trust company may establish additional offices in same city for convenience of its patrons, where deposits may be made, checks cashed, and records kept thereof, since such transaction does not constitute "business of banking" within Ky. Stats., section 579, and is clearly incidental to bank's business.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellant.

HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Affirming:

In this proceeding for an injunction, it is substantially alleged in the petition that the plaintiff was organized under the state law, with authority to conduct a combined bank and trust company, its office being at 5th and Court place in the city of Louisville. In accordance with a plan adopted and followed by rival institutions, its directors decided to establish one or more bank offices in different parts of the city where deposits might be made, checks cashed and records kept of such transactions without conducting any other character of business thereat, this being done for the mutual convenience of the bank and its patrons. It applied to the state banking commissioner for his approval, but he refused to approve the plan and threatened in the event that it was put into operation to visit the bank with the penalties prescribed in section 165a-16, Ky. Statutes, on the ground that it has no legal authority so to act, the prayer being for a perpetual injunction restraining that officer from taking any steps to prevent it from carrying out the plan mentioned. A demurrer to the petition was filed and overruled, and without further pleading the case was finally submitted and the court granted the relief sought, subject to the following qualification: "But this judgment shall not be considered as recognizing any right in plaintiff to lend money at such office or offices other than its main office, nor as enjoining the banking

commissioner from taking steps to prevent the lending of money at such office or offices away from the main office, if plaintiff should attempt to do so." Defendant appeals.

We have held that a bank organized under the laws of this state has no right to establish a branch bank. Bruner v. Citizens' Bank of Shelbyville, 134 Ky. 283. Both parties concede the binding force of this opinion, the controverted question being as to whether appellees plan to open offices for the receipt of deposits and payment of checks will constitute the establishment of branch bank; so the case may be said to turn upon the definition of banking. Originally banking seems to have been restricted to the receiving of deposits. With the development of the business came the discounting of paper, the loaning of money and the other varied activities in which modern banks engage, the enumerated powers which may be exercised by a bank under our statute, section 579, being quite extensive. In view of this evolution of the business and of the further fact that in many states the business is defined by statute, uniformity of definition cannot be expected, and it will be found that in many of the older authorities, and in the states in which the business is defined by statute, that it is laid down that an institution that merely receives deposits is in the strictest commercial sense a bank. Bouvier's Dictionary; Oulton v. Savings Institution, 17 Wall. 117; McLaren v. State, 141 Wis. 577; Curtis v. Levitt, 15 N. Y. 9; Reed v. People, 125 Ill. 592.

On the other hand, in the later case of Warren v. Snook, 91 U. S. 704, it is said: "Having a place of business where deposits are received and paid out on checks and where money is loaned upon security is the substance of the business of a banker." And in Mercantile Bank v. New York, 121 U. S. 138, the court is still more elaborate in its definition, saying:

"The business of banking, as defined by law and custom, consists in the issual of notes, payable on demand, intended to circulate as money, where the banks are banks of issue, in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans and dealing in negotiable securities issued by the

government, state and national, and municipal and other corporations.''

The latter opinion of course refers to National Banks, and, as indicated *supra,* our statute, while not covering all the subjects therein enumerated, is equally elaborate in other particulars. Of course in order to do a banking business it is not essential for an institution to exercise all of the powers permitted by its charter. But, on the other hand, present day banking business is not to be confined to the narrow limits of its original inception. It is well known that insurance companies and other like institutions loan money, yet they are not banks. Also under existing conditions a bank could not secure business if it charged money on deposits; and it would be entirely impractical for such an institution to merely receive deposits and pay them out on demand without making loans. Such a business could not exist for any length of time. Other illustrations might be given, but these are sufficient to show that the matter must be considered in a practical way and in the light of modern conditions. When so done we think the above definition from Warren v. Snook peculiarly apt: ''Having a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker.''

It follows that the proposed plan does not fall within the inhibition of the Bruner case *supra,* as to the establishment of branch banks, nor does it conflict with that opinion in any other particular. Banks are the depositories of most of the funds of the country, and the above decision is based on the principle that they are *quasi* public institutions, established and regulated by statute. The safety of the funds is carefully guarded and this calls for the exercise of discretion and direct control upon the part of the directors and chief officers in the matter of loans, discounts, investments and other like duties. Branch banks in effect carry on the same business as that conducted by the parent institution without being subject to the safeguards thrown around the establishment and administration of the latter, and therefore such branches are not only unauthorized by the statute but impliedly inhibited by it. That opinion, however, expressly recognizes the right of a bank to ''have as many duly appointed agents as its needs require, and these agents, among other things, may re-

ceive and forward to it at its place of business the money of persons who desire to deposit with it.''

In principle the same rule would apply to agents who merely receive deposits and pay out checks on demand, duties that are incidental to the business, but which do not require special discretion and business acumen. The paying teller of a bank should have a technical knowledge of handwriting and be able to detect forgeries and identify signatures, and both he and the receiving teller should be accurate in their calculations. But neither of these agents can loan money or invest the banking funds, and the fact that these minor duties are carried on at more than one place in no wise affects the banks' solvency.

For illustration, if a bank occupies an entire city block, can it be doubted that it can establish an office for the receipt of deposits and payment of checks at each corner of its building and keep separate books at each place? Clearly the installation of such offices in the building is incidental to that business, and such an arrangement would have no injurious effect upon the financial management and control of the bank's business, as the officials charged with those duties do not devote their time to the details of the receipt of deposits or payment of checks. If such additional offices can be established at different points in the main building under the bank's control no good reason appears why they may not be established elsewhere throughout the city of its location, for the same purpose. The convenience to the general public of such an arrangement is easily perceived. The time consumed by a great number of depositors in making daily trips to and from banks of deposit during business hours calls for some measure of economy and renders the arrangement suggested very desirable, and as it is clearly incidental to the bank's business and neither violates the statute nor public policy and the judgment of the court limits its application to the matter of receiving deposits and paying checks, no good reason can be perceived for denying the application.

Wherefore, perceiving no error, the judgment is affirmed.