

# The Attorney General of Texas

August 15, 1979

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Robert E. Stewart
Commissioner
Department of Banking
2601 North Lamar
Austin, Texas 78705

Opinion No. MW-44

Re: Definition of "central build-ing" in article 342-903, V.T.C.S.

Dear Commissioner Stewart:

You have asked our opinion regarding the meaning of the term "central building," as it is used in article 342-903, V.T.C.S., which provides in part:

No State, national or private bank shall engage in business in more than one place, maintain any branch office, or cash checks or receive deposits except in its own banking house. For purposes of this article 'banking house' means the building in whose offices the business of the bank is conducted and which is functionally one place of business, including (a) office facilities whose nearest wall is located within five hundred (500) feet of the nearest wall of the central building and is physically connected to the central building by tunnel, passageway or hallway providing direct access between the central building and the connected office facility or by closed circuit television or pneumatic tube or other physically connected delivery device, and (b) in addition, if authorized in the manner hereinafter provided, not more than one (1) automobile drive-in facility whose nearest boundary is located within two thousand (2,000) feet of the nearest wall of the central building but more than five hundred (500) feet therefrom and is connected to the central building by tunnel, passageway or hallway providing direct access between the central building and the connected automobile drive-in facility or by closed circuit television, pneumatic tube or other physically connected delivery device. The entire banking house shall for all purposes under the law be considered one

integral banking house.  The term 'automobile drive-in facility' as herein used shall mean a facility offering banking services solely to persons who arrive at such facility in an automobile and remain therein during the transaction of business with the bank.

You specifically inquire whether the term "central building" encompasses the entire building within which a bank's business is conducted or whether it refers only to that part of the building actually used to conduct the bank's business.   The cardinal rule in construing the language of a statute is to ascertain the intent of the legislature.  Minton v. Frank, 545 S.W.2d 442 (Tex. 1976).   In so doing, it is appropriate to look first to the statute itself.  Jones v. Del Andersen & Associates, 539 S.W.2d 348 (Tex. 1976).  Although the term "central building" is not specifically defined, its use in context with other terms in the statute is consistent throughout.  Office and drive-in facilities are never referred to as "buildings."  That word is used only in the term "central building," which refers to the phrase "the building in whose offices the business of the bank is conducted."  (Emphasis added).   The latter phrase is used to define the term "banking house," which includes office and drive-in facilities not located in the central building.  The statute consistently distinguishes between buildings and additional facilities.   This evidences the legislative intent that the entire building in whose offices the bank's business is mainly conducted is the "central building."  We believe that the term "central building" is not limited to that portion of the building actually occupied by the bank for the conduct of its business.

Although we have been unable to find any case directly on point, Great Plains Life Insurance Co. v. First National Bank of Lubbock, 316 S.W.2d 98 (Tex. Civ. App. — Amarillo 1958, writ ref'd n.r.e.), involved a drive-in facility consisting of leased space in a building connected by pneumatic tubes to the bank building proper.  The court in that case quoted with approval the Kentucky case of Marvin v. Kentucky Title Trust Co., 218 Ky. 135, 291 S.W. 17, 18 (Ky. Ct. App. 1927).  Both the Texas court and the Kentucky court apparently recognized the distinctions between the main bank building and any other outlying additional office facilities.  See also Attorney General Opinion M-849 (1971).  We note that it is not uncommon for banks to occupy only a portion of the building that constitutes their banking house, the remainder of the building being occupied by other entities.   In a prior Attorney General Opinion concerning the propriety of a bank's acquiring a certain building for its banking house, this office stated:

> We cannot close our eyes to the fact that in many instances — perhaps in most instances — our better banks occupy their own buildings consisting of several, sometimes many stories, and much, if not most of the floor space is not actually used by the bank in conducting its banking business but is rented out.  There can be no valid objection to this if the major good faith purpose of the acquisition or construction of the building be to provide a banking house for the institution.

Attorney General Opinion O-2691 (1940).

You inform us that you would construe the entire building to be the central building, although the bank might occupy only the ground floor.  You applied a similar construction

in approving an office facility of the Greenway Bank & Trust to be located within five hundred feet of the nearest wall of the large building complex wherein were located the bank's main banking offices. To the extent necessary to resolve ambiguities in the meaning of the statute, the construction placed upon it by the agency charged with its administration is entitled to weight in the courts. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974); Calvert v. Kadane, 427 S.W.2d 605 (Tex. 1968).

You ask whether a particular complex known as Allen Center constitutes a central building as that term is used in article 342-903, V.T.C.S. The answer to your question requires the resolution of fact questions, which cannot be done in the opinion process. See Attorney General Opinions H-1108 (1977); M-849 (1971).

You also inquire whether the subterranean walls of a central building may be used as measuring points between the central building and the proposed office facility. We believe that the subterranean walls of the central building may be used as the measuring point. This recognizes the common practice in modern architecture of incorporating greenbelt landscaping and building setbacks for aesthetic purposes. The result is that subterranean walls of such buildings extend farther than do the building walls located above the surface of the ground. We see no prohibition in the statute against the use of the subterranean walls in the central building as the measuring point in the application of the distance restrictions imposed by law.

On the contrary, the statute provides that the connection between the central building and the office facilities may be by passageway, hallway, or tunnel. V.T.C.S. art. 342-903. The latter term implies subterranean structure, and suggests that the legislature did not intend to limit the relationship between the central building and the office facility to above-ground structures. Indeed, many banks use underground floor space in their banking houses. See Houston National Bank v. Adair, 207 S.W.2d 374 (Tex. 1948) (bank located its safe-deposit boxes in the basement of its building). We do not believe, however, that the statute should be construed to allow two or more buildings to constitute one central building merely because they are connected by tunnel, passageway, or underground driveway. Such a broad construction could run afoul of the statutory and constitutional proscriptions that no bank shall enage in business in more than one place. Tex. Const. art. XVI, S 16; V.T.C.S. art. 342-903. It is well settled that, to the extent that a statute may be ambiguous, it should be given that construction which will render it constitutional. Key Western Life Insurance Co. v. State Board of Insurance, 350 S.W.2d 839 (Tex. 1961). We also emphasize that any given bank consisting of the central building and any additional office or drive-in facilities must be used as a unit, devoted to a common purpose, and that they must together constitute but one integral banking house. V.T.C.S. art. 342-903; Attorney General Opinion V-1046 (1950); Letter Advisory No. 96 (1975).

## S U M M A R Y

The term "central building," as it is used in article 342-903, V.T.C.S., encompasses the entire building in whose offices the

business of the bank is conducted, and it is not limited only to that portion of the building that is actually being used to conduct the bank's business. The term also permits the subterranean walls of the central building to be used as a measuring point for purposes of determining whether additional office facilities are within the distance limitations imposed by the statute.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Tom Rutledge
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
David B. Brooks
Susan Garrison
Rick Gilpin
Tom Pollan
William G Reid
Tom Rutledge
Bruce Youngblood