THE STATE ex rel. JESSE W. BARRETT, Attorney-General, v. FIRST NATIONAL BANK OF ST. LOUIS.

In Banc, March 3, 1923.

1. **NATIONAL BANK:** Powers: Express and Incidental. A national bank possesses such powers as are expressly granted to it by a constitutional act of Congress, and such other incidental powers as are clearly within the scope and purview of the purpose for which it was created.

2. ———: Place of Business: General Designation: Specific Location. Only a general designation of the proposed location of a national bank is required by Section 5134 of the Act of Congress of June 3, 1864, requiring persons desiring to organize such a bank to file with the Comptroller of the Currency a statement designating the particular county, city, town or village in which its business is to be carried on; and under Section 9744 it is of no concern of the Comptroller at what particular place within the county, city or town the bank is to be located, that being a matter for the determination of the board of directors in establishing the business, but they are confined to "an office or banking house within the county, city or town" named in the articles, and it is at such office or banking house that the power of the bank is to be exercised, and not elsewhere. The bank cannot have a multiplicity of banking houses or places of business.

3. ———: Branch Banks: Incidental Power. The incidental powers of a national bank do not authorize the establishment of branch banks.

4. ———: ———: ———: Things Directly and Immediately Appropriate. Subdivision 7 of Section 9661 of the National Bank Act, granting incidental powers, furnishes as an illustration of the powers directly and immediately appropriate to the exercise of the specific powers granted, in that, immediately following the phrase conferring incidental powers upon the board of directors of a national bank, it designates, as powers granted, the discounting and negotiating of promissory notes, drafts, bills of exchange and other evidences of debt; the receiving of deposits; the buying and selling of exchange, coin and bullion; the loaning of money on personal security, and the obtaining, issuing and circulating of notes. In no sense is the establishment of a branch bank essential to the exercise of these powers, nor is a branch bank a necessary incident to the carrying on of the banking business.

5. STATUTORY CONSTRUCTION: Grant of Powers: Refused Enlargement in Subsequent Acts: Branch Banks. The Act of Congress of 1865, providing that any banking institution organized under state law and having branches might become a national bank and retain its branches was a legislative construction that the original National Bank Act of 1864, which is unambiguous in its terms, did not authorize the establishment of branch banks.

6. ———: ———: Interpretation by Special Acts. The establishment by special acts of Congress of a branch bank at Chicago during the Columbia Exposition of 1893 and at St. Louis during the Louisiana Exposition of 1904 was a legislative construction of the National

Bank Act of 1864, which excludes from the incidental powers of a national bank the right to establish branch banks.

7. ————: ————: **Administrative Interpretation.** A long-continued interpretation of a statute by public officers charged with its execution, to the effect that the incidental right of a national bank to establish a branch bank was not implied in the National Bank Act of 1864 or the kindred Act of 1865, while not controlling on the courts, is entitled to special consideration when they are called upon to determine whether such right was conferred or implied in those acts.

8. **NATIONAL BANKS: Branches.** Neither by express terms nor by reasonable implication have national banks been authorized by the acts of Congress to establish branches in states which have not granted that authority to corporations doing business therein.

9. ————: ————: **Prohibited by Processes of State.** While it is true that national banks owe their existence to Federal law alone and are subject to the paramount authority of the United States, and that the State cannot by legislation control their affairs or define their duties whenever such an attempt expressly conflicts with such paramount authority, the processes of the State may be invoked to prevent the exercise by a national bank of powers shown to be *ultra vires* under the law of its creation. The right of a national bank to establish branches not having been permitted by the acts of Congress, either by express terms or necessary implication, the State may prohibit their establishment within its bounds.

10. ————: ————: **Violation of State Law: Quo Warranto.** The Missouri statute (Sec. 11737, R. S. 1919) expressly forbids any bank to maintain a branch bank in this State, and a writ of *quo warranto* invoked by the Attorney-General is a recognized and appropriate remedy to determine the right of a national bank to establish and maintain a branch bank in Missouri.

11. ————: ————: **Quo Warranto: In Supreme Court.** The Supreme Court of Missouri has jurisdiction of a civil *quo warranto* invoked by the Attorney-General to prevent a national bank from establishing or conducting a branch bank in this State.

*Quo Warranto.*

Ouster ordered.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for informant; *Sam B. Jeffries, Carter, Collins & Jones, H. R. Small, Foristel*

*& Eagleton, Marion C. Early* and *T. F. Chaplin* of counsel.

The information states a cause of action. The information charges that respondent, without national or state authority, and in violation of national and state law, has established and is operating a branch bank at St. Louis, Missouri, and proposes to establish and operate numerous other branch banks in St. Louis, Missouri. (a) It is outside the authority of and against the law for a national or a state bank to establish or operate branch banks in Missouri. National Bank Act provisions: U. S. R. S., sec. 5134 (U. S. Comp. Stat. 1916, sec. 9659; U. S. R. S., sec. 5155 (U. S. Comp. Stat. 1916, sec. 9695); Act of Congress, May 1, 1886, c. 73, sec. 2, 24 Stat. 18 (U. S. Comp. Stat. 1916, sec. 9662); U. S. R. S., sec. 5190 (U. S. Comp. Stat. 1916, sec. 9744); Act of Congress, Dec. 23, 1913, c. 6, sec. 25, as amended, Act of Congress, Sept. 7, 1916, c. 461 (U. S. Comp. Stat. 1916, sec. 9745). Special branch bank authorizations by Congress: For branch of a national bank at the Chicago Exposition, Act of Congress, May 12, 1892; for branch bank at Louisiana Purchase Exposition at St. Louis, Act of Congress March 3, 1901. Rulings and authorities: First National Bank v. Hawkins, 174 U. S. 364, 369; Opinion of Attorney-General of the United States in case of Lowry National Bank of Atlanta, Ga., vol. 29, page 81; Magee on Banks and Banking (2 Ed. 1913) pp. 42-45; Pratt's Digest of Federal Banking Laws (1920 Ed.) p. 100; Ruling of Comptroller of the Currency that national banks have no right to establish or operate branch banks in Missouri 1922; First National Bank of Elizabethtown v. Commonwealth of Kentucky, 34 L. R. A. (N. S.) 54. Missouri Statutes provisions: Sec. 11737, subdiv. 1, and Sec. 11684, R. S. 1919. (b) Courts recognize the construction placed upon statutes by officers whose duty it is to execute them, especially when such construction has been made by the highest officers in the executive department of the government and have been

followed for many years, when, too, such construction is reasonable and of great persuasive force. Ewing v. Vernon County, 216 Mo. 681; United States v. Finnell, 185 U. S. 236; Sedalia v. Smith, 206 Mo. 364; Construction Co. v. Ice Rink Co., 242 Mo. 262; State ex rel. v. Cupples 283 Mo. 115. (c) The course of conduct of national banks relative to branches, the attitude of the Congress relative thereto, and the rulings and attitude of the United States Treasury Department, have fixed a positive policy of limitation against branch banking by national banks in the United States since 1864, and the courts will recognize such long-established banking practice and legislative, executive and general policies, and will adopt such construction of the statutes, there being nothing in conflict with such construction. 36 Cyc. 1140-1142; Krohn v. Kansas City Home Telephone Co., 131 Mo. App. 313; McChesney v. Hager, 104 S. W. 714; Ewing v. Vernon County, 216 Mo. 689; Corsicana Natl. Bank v. Johnson, 251 U. S. 83. (d) The national public policy and Missouri public policy on branch banking in Missouri are one and the same. There is no conflict of policies involved in this case. Missouri is simply seeking to suppress illegal, unauthorized acts of respondent that are opposed to the policy of both state and nation. Gilbert v. Minnesota, 254 U. S. 325, 329; Halter v. Nebraska, 205 U. S. 34; Hale v. Henkle, 201 U. S. 43. (e) The same act may be a transgression against both the Federal and State governments and each may punish or suppress without a conflict between their respective sovereignties. Gilbert v. Minnesota, 254 U. S. 325, 332; Hale v. Henkel, 201 U. S. 43. (f) While a suit may not be brought (because of the Eleventh Amendment to the Federal Constitution) against a state or the officials of a state, acting under and in pursuance of lawful authority, suit may be brought against state officials, even by individuals, to keep them from enforcing unconstitutional or illegal enactments, for the reason that such enactments are nullities and, therefore, such officials cannot be acting as such in attempting to enforce them.

Likewise, operations of a national bank organization that are outside the field of authorized national bank operations and so are, in fact, not national bank operations, can be challenged by the state in which such operations take place. And if, besides being unauthorized by and in violation of national authority, such operations are also opposed to state law governing banks and are against the public policy of the state, such outlaw operations may properly be suppressed by the state. Ex parte Young, 209 U. S. 123, 159; Merchants Exchange v. Knott, 212 Mo. 616, 647, 648; Carson v. Sullivan, 223 S. W. (Mo.) 571; First Natl. Bank v. Kentucky, 34 L. R. A. (N. S.) 54; Sec. 11684, R. S. 1919.

*Jones, Hocker, Sullivan & Angert* for respondent.

(1) The temporary injunction issued in aid of the writ of *quo warranto* was invalid and contrary to the Federal statute. U. S. Compld. Stat., sec. 9834; Pacific Natl. Bank v. Mixer, 124 U. S. 721; Van Reed v. People's Natl. Bank, 198 U. S. 554; 3 R. C. L. sec. 323, p. 691; 7 C. J. sec. 803, p. 838; Freeman Mfg. Co. v. Natl. Bank 160 Mass. 398; Meyer v. First Natl. Bank, 10 Ida. 175; Hazen v. Natl. Bank, 70 Vt. 543; Dennis v. First Natl. Bank, 127 Cal. 453; Chesapeake Bank v. First Natl. Bank, 40 Md. 269. (2) The State has no power to complain. A national bank is the creature of national sovereignty, and amenable to and controllable by it and no other, and an information in *quo warranto* against a corporation lies only at the instance and in the name of the sovereign power which created it. State ex rel. v. Curtis, 35 Conn. 374; State ex rel. Parker v. Bowen, 8 S. C. 400; McCulloch v. Maryland, 4 Wheat. 429; Ableman v. Booth, 21 How. 516; Territory v. Lockwood, 3 Wall. 238; McClung v. Silliman, 6 Wheat. 603; Tarble's Case, 13 Wall. 405; Tennessee v. Davis, 100 U. S. 263; In re Neagle, 135 U. S. 1; State ex rel. v. Cincinnati Ry. Co., 6 L. R. A. 321; 22 R. C. L. 685; First Natl. Bank v. Union Trust Co., 244 U. S. 427. (3) A national bank is given authority to

transact such a banking business as is specified in the act of Congress, and all incidental powers necessary to carry on that business are granted. 13 U. S. Stat. sec. 5136; First Natl. Bank v. National Exchange, 92 U. S. 127; Western Natl. Bank v. Armstrong, 152 U. S. 351; Bullard v. Bank, 18 Wall. 593; Logan County Natl. Bank v. Townsend, 139 U. S. 73; Shoemaker v. Natl. Mechanics' Bank, Fed. Cas. 12801; Shinkle v. First Natl. Bank of Ripley, 22 Oh. St. 524; Weekler v. First Natl. Bank, 42 Md. 592; Yerkes v. National Bank, 69 N. Y. 385; Wiley v. First Natl. Bank, 47 Vt. 553; Head v. Providence Ins. Co., 2 Cranch. 127, 169; Bank of United States v. Dandridge, 12 Wheat, 68; Green Bay & Minn. Railroad v. Union Steamship Co., 107 U. S. 100; People v. Pullman Palace Car Co., 175 Ill. 136; State v. Hancock, 35 N. J. L. 545; Wright v. Hughes, 119 Ind. 328. (4) Banking corporations have power to establish and maintain agencies. Bank of Augusta v. Earle, 13 Pet. 517; Tombigbee Railroad Co. v. Kneeland, 4 How. 15; Zane on Banks & Banking, sec. 24.

WALKER, J.—This is an original proceeding in *quo warranto* to determine the authority of a national bank engaged in business in the city of St. Louis to establish and conduct a branch bank at another than its regular place of business in said city.

I. A national bank is an artificial legal entity, created to facilitate the transaction of fiscal affairs under the authority of the laws of the United States. Like other corporations, it possesses such powers as are granted to it by the act of its creation, or more comprehensively stated, which have been or may be conferred upon it by Congress within the limitations of the Federal Constitution. This reference as to the origin of its powers does not, as we shall subsequently show, prevent state legislation in regard thereto. Existing, as it necessarily does, by law, it possesses only such powers as are expressly granted or

*Powers of National Bank.*

which may necessarily be implied for the effective discharge of its corporate functions. As to powers expressly granted, no difficulty need be encountered in defining their limitations. As to those incidental, it must appear, to authorize their exercise, that they are clearly within the scope and purview of the purpose for which the corporation was created. This rule is especially applicable when it is sought to invoke what are termed the powers of a corporation incident to it at common law; such application being authorized only when it is apparent that the power invoked is a necessary incident to the proper exercise of the corporation's existence or functions. [Kerens v. Trust Co., 283 Mo. l. c. 621; State ex inf. v. Mo. Ath. & St. L. Clubs, 261 Mo. l. c. 599; Millinery Co. v. Trust Co., 251 Mo. l. c. 575.]

These rules are elementary in character to the extent that they may be termed horn-book law on this subject. They have been stated to emphasize their general application to all classes of corporations in the absence of statutes to the contrary.

While we have contented ourselves with the citation of cases in this behalf determined within our own jurisdiction, they assert a general doctrine which does not contravene the rulings of any court, state or national, when rightly considered. To illustrate: In Bullard v. Bank, 18 Wall. l. c. 593, it was held that "the extent of the powers of national banking associations is to be measured by the act of Congress under which such associations are organized."

In Logan County Bank v. Townsend, 139 U. S. l. c. 73, it was announced with equal emphasis that "it is undoubtedly true, as contended by the defendant, that the national banking act is an enabling act for all associations organized under it, and that a national bank cannot rightfully exercise any powers except those expressly granted by that act, or such incidental powers as are necessary to carry on the business of banking for which it was established."

To a like effect are the following cases: Bowen v.

Needles Natl. Bk., 94 Fed. 925; Commercial Natl. Bk. v. Pirie, 82 Fed. 799, 49 U. S. App. 596; Hanover Natl. Bk. v. First Natl. Bk., 109 Fed. 421, 48 C. C. A. 482; Hyde v. Equit. Life Assur. Soc., 116 N. Y. Supp. 219; Ocmulgee Lbr. Co. v. Ry. Co., 251 Fed. 161; State v. Am. Sugar Ref. Co., 138 La. 1005; Somerville Water Co. v. Somerville, 78 N. J. Eq. 199; Knapp v. Sup. Commandery, 121 Tenn. 212.

Guided by these rules a reference to and a review of the laws creating national banks and defining their powers is of first consideration.

Persons desiring to form a national bank are required, among other things, under the Act of Congress of June 3, 1864, to file with the Comptroller of the Currency a statement of the place where its operations of discount and deposit are to be carried on, designating the state, territory or district, and the particular county, city, town or village. [Subdiv. 2, sec. 9659, p. 4406, 4 U. S. Comp. Stat.]

*Location.*

A subsequent section of the same act provides that the usual business of each national banking association shall be transacted at an office or banking house located in the place specified in its organization certificate. [Sec. 9744, p. 4450, 4 U. S. Comp. Stat.]

No express power to establish a branch bank appears in either of these statutes. Section 5134, in requiring the certificate of organization to designate the county, city or town in which the bank is to be located, is intended for the information of the Comptroller in enabling him to intelligently determine whether the authority sought to be exercised should be granted. While the banking act is silent on the subject, a construction of same is not unreasonable which clothes the Comptroller with at least such discretion in the premises as will enable him to act intelligently or with a proper regard for the demands of business in approving or rejecting the articles of organization. Hence, a general designation of the proposed business location as provided in said section is all that is necessary.

The purpose of Section 9744 is not for the information of the Comptroller, it being a matter with which he has no concern when he has granted the articles as to where the place of the business shall be located within the county, city or town. This is a matter to be determined by the board of directors in establishing the business. To render their act specific it must be confined to the terms of the statute, viz: to "an office or banking house within the county, city or town" named in the articles. This location having been established, it is within the contemplation of the statute that the power of the bank is to be there exercised. Otherwise the words "an office or banking house" cease to be specific, and instead of being singular in number may be construed as plural, and thus permit the establishment of banks in as many places within the county, city or town as the judgment of the directors may prompt. Such a construction finds no resting place in reason. If followed it would, instead of centralizing and rendering more stable the powers of a bank, enable it, by multiplying its places of business, to subdivide and at the same time extend its powers in such manner as to stifle competition. Such an effect was certainly never contemplated by the banking act.

II.   We are more concerned, however, with an interpretation of the language of subdivision 7 of Section 9661, granting incidental powers, whether literally or liberally construed, than with the probable effect of its opertion under the construction sought to be given to it by the respondent. If, as we have stated, the terms of Section 9744 be unmistakable in limiting the location of the place of business, such location, so long as maintained, will, under the terms of the statute, exclude by implication the establishment of a branch bank, the business of which is to be conducted under the authority of the original articles of organization. However, it is contended that the power to establish branches is authorized under Section 9661. The language of subdivision 7 of that section pro-

Incidental and Implied Powers.

vides, among other things, that the board of directors of a bank may, subject to law, exercise all such incidental powers as shall be necessary to carry on the banking business. Several preliminary assumptions are necessary before substantial color can be given to this contention. First, Section 9744 must be so construed as to authorize the transaction of a bank's business at offices or banking houses instead of at "an office or banking house;" second, the establishment of a branch bank must be held to be the exercise of an incidental power; third, such power when exercised must be within the law; and, fourth, it must be necessary to the transaction of the banking business.

The first assumption we have discussed with the result that the unmistakable character of the words employed and the purpose to be accomplished did not in our opinion authorize such an interpretation of the section as to enable its terms to be read in the plural as well as the singular number. The second involves the question as to the meaning of incidental powers. The statute (Subdiv. 7, Sec. 9661) employs the word incidental, rather than the word implied in designating the power other than that expressly conferred on the board of directors. An incidental power, as we said in State ex inf. Harvey v. Missouri Ath. & St. L. Clubs, 261 Mo. l. c. 599, is one directly and immediately appropriate to the execution of the powers expressly granted and exists only to enable the corporation to carry out the purpose of its creation. [Citing cases.]

An implied power is one that may be inferred from that granted, or as the Supreme Court of Massachusetts has said (Adams v. Marshall, 138 Mass. 228) it is a grant or reservation by implication of law. In State ex inf. Harvey, supra, we defined an implied power more elaborately as one "possessed by a corporation not indispensably necessary to carry into effect others expressly granted, and comprises all that is appropriate, convenient and suitable for that purpose, including, as an incidental right, a reasonable choice of the means to be

employed in putting into practical effect this class of powers.'' Without chopping logic or refining distinctions as to these adjectival words, it will suffice to say that in statutes and judicial opinions they are frequently interchangeably used. [3 Thomp. Corp. (2 Ed.) sec. 2105.] This need not concern us, however, in the determination of respondent's contention, as the statute uses the word incidental and to this we will give attention.

What, therefore, are the powers of a national bank "directly or immediately appropriate to the execution of the specific powers granted?'' The provisions of Subdivision 7, following the phrase conferring incidental powers upon the board of directors, furnish examples from which, by analogy, the scope of this character of powers may be determined. They include the discounting and negotiating of promissory notes, drafts, bills of exchange and other evidences of debt; the receiving of deposits; the buying and selling of exchange, coin and bullion; the loaning of money on personal security; and the obtaining, issuing and circulating of notes. While these powers are distinct and neither is a limitation upon either of the others, they cannot be otherwise held than as directly and immediately appropriate to the transaction of the banking business. Although they may not be such incidental powers as are given generally to all banking institutions, they are incidental to banks created under the National Bank Act. [Seligman v. Charlottesville Nat. Bk., 3 Hughes, 647, 21 Fed. Cas. No. 12642.] While a national bank may lawfully do many things in securing and collecting its loans in the enforcement of its rights and the conservation of property previously acquired, the exercise of such powers is incidental in being necessary for the purpose of carrying into effect the powers expressly granted. [Morris v. Third Natl. Bk., 142 Fed. 25, 73 C. C. A. 211; Cooper v. Hill, 94 Fed. 582, 36 C. C. A. 402.] The cases cited are illustrative of the limitations upon the latitude given national banks, not in the character of acts they may primarily engage in as a business, but in the management and protection

of property and property rights acquired in the usual banking transactions, including such minor incidental powers in addition as may be adapted to the ends in view.

In addition to those cited the trend of the cases defining the incidental powers of national banks is in harmony with the foregoing conclusion.

The apparent purpose for the establishment of branch banks is to multiply the places of business of the principal bank and thereby increase the volume of same. As a manifestation of commercial progress, the effort. may well be commended. That phase of the matter, however, is not under consideration. It is a question of power and not progress that demands solution. Certainly it is in no sense essential to the exercise of any of the powers granted nor is it a necessary incident to the carrying on of the banking business within the meaning of the statute.

The third limitation necessary to be observed before an incidental power can be invoked by a national bank, is that it must be "within the law." The law referred to is the National Bank Act to which banks organized thereunder owe their existence and within the scope and purview of which they must exercise their functions. The sections of the act reviewed lend no countenance to the contention that the establishment of branch banks is within the scope and purview of these sections and hence not within the law.

The fourth and last limitation upon the exercise of incidental power by a board of directors required by Subdivision 7 is that such power shall be necessary "to carry on the business of banking." In a review, of the other conditions necessary to the exercise of power referred to, we have held that the carrying on of the banking business did not require the establishment of branch banks and hence that it was not within the terms of the statute.

III. An unambiguous statute, such as the National Bank Act, does not require the adventitious aid of sub-

sequent kindred legislation to determine its meaning. Despite this fact where, as here, there is a general grant of power, however clear that grant may be, the enactment of subsequent legislation containing a specific kindred grant of power will afford at least persuasive support to the conclusion that the latter was not included within the former or the original grant. Such is the effect of the Act of Congress of March 3, 1865, now Section 9695, 4 U. S. Comp. Stats. p. 4421. This act provides that any bank or banking institution organized under a state law and having branches, may in conformity with existing law become a national bank and retain its branches. In the passages of this act it is evident that the legislative construction of the original is that it did not authorize the esablishment of branch banks. Otherwise the subsequent Section 9695 would not have been enacted. A recognition of the limitations of the National Bank Act is evident from the fact that the right of a national bank to have branches as provided in said section is limited to states the banking laws of which authorize the establishment of branches.

*Legislative Interpretation.*

   The establishment by special acts of Congress of a branch bank at Chicago during the Columbia Exposition and at St. Louis during the Louisiana Purchase Exposition, affords further evidence of legislative construction of the National Bank Act, which excludes from its incidental powers the right to establish branch banks.

   In addition, it is a well established rule of construction that a long-continued interpretation of a statute by public officers charged with its execution, while not controlling upon the courts, is entitled to special consideration. [McAllister v. Cupples Station L. H. & P. Co., 283 Mo. 115; State ex rel. Chick v. Davis, 273 Mo. 660; State ex rel. Kin. Tel. Co. v. Roach, 269 Mo. 437; Ewing v. Vernon Co., 216 Mo. l. c. 689.]

   Apropos of the foregoing, it is shown that the attorneys-general of the United States have uniformly construed the National Bank Act as not authorizing the establishment of branch banks.

IV.   Enough has been said to demonstrate the fact that neither by express terms nor reasonable implication can it be held that national banks are authorized to establish branches in states which have not granted that authority to banking corporations doing business therein.

Power of State to Prevent. This being true, it remains to be determined whether the processes of the State can be invoked to prevent the exercise of power by a national bank shown to be *ultra vires* under the law of its creation.   That national banks are corporate entities which owe their existence to Federal law alone and as such are subject to the paramount authority of the United States, there can be no question.   Equally as well established is the fact that a state cannot through its legislative department define the duties of national banks or control their affairs whenever such attempted exercise of authority expressly conflicts with the law of the United States.   [Davis v. Elmira Savings Bk., 161 U. S. 275; McClellan v. Chipman, 164 U. S. 356.]

The information filed herein by the Attorney-General does not involve the commission of an act in conflict with the laws of the United States, nor does it tend to impair the efficiency of any agency of the National Government.   It cannot, therefore, be said to be in conflict with the rule above announced, and hence does not violate it.

This conclusion finds ample support in a review of the National Bank Act alone; but if further reasons therefor are deemed necessary they may be found in an illuminating discussion by the Supreme Court of Kentucky (First Natl. Bk. v. Comm., 143 Ky. 816, 34 L. R. A. (N. S.) 54) defining the limits that may be placed upon the Federal control of national banks, or conversely the extent to which the state may exercise control over them.   The state court ruled in the affirmative on this question.   The objection was made that the bank was an agency of the Federal Government for which Congress had provided a complete system of control and regulation, and that the State could not in any manner interfere

with its affairs, and that state laws applicable to banks incorporated within the State were inoperative as to national banks. The court held, in effect, that while a state cannot either by its constitution or legislation directly or indirectly regulate or control the organization or conduct of a national bank so as to interfere with the business for which it was created, the law of the state applicable to banks and other corporations organized therein may be invoked against a national bank when it attempts to exercise rights or do things outside the scope of the business it was created to conduct and which is not essential to its existence or efficiency; that when a national bank exceeds the purpose of its creation and goes beyond the scope of its functions the state may deal with such of its transaction as are in excess of the authority conferred upon it by Congress and in violation of the laws of the state in the same manner as it would deal with the business or property of any other banking corporation.

The rule as thus announced is supported by the holding of the United States Supreme Court in the Davis Case, supra, in which, after declaring the paramount authority of the Federal law over national banks, it was said that "nothing in this opinion is intended to deny the operation of general and undiscriminating state laws on the control of national banks so long as such laws do not conflict with the letter or the objects and purposes of Congressional legislation."

A further ruling to like effect by the United States Supreme Court is found in the McClellan Case, supra. In that case an insolvent debtor conveyed real estate to a national bank, thereby giving it a preference. This act was assailed by the other creditors as in violation of a state statute. The bank resisted the right of the creditors as thus asserted, upon the ground that national banks, under the Federal laws, were authorized to take deed to real estate to secure preexisting debts, and that the Massachusetts statute was in conflict with the act of Congress and, hence, inoperative. The Supreme Court

held that the state law was not in conflict with the act of Congress and that the other creditors had a right to share in the property conveyed to the bank. The exhaustive manner in which the question was considered is shown in the following excerpt from the opinion.

" 'National Banks are subject to the laws of the state and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the Government that it becomes unconstitutional' . . . Nor is there anything in the statutes of the State of Massachusetts, here considered, which in any way impairs the efficiency of national banks or frustrates the purpose for which they were created. No function of such banks is destroyed or hampered by allowing the banks to exercise the power to take real estate, provided only they do so under the same conditions and restrictions to which all the other citizens of the state are subjected, one of which limitations arises from the provisions of the state law which, in case of insolvency, seeks to forbid preferences between creditors. Of course, in the broadest sense, any limitation by a state on the making of contracts is a restraint upon the power of a national bank within the state to make such contracts; but the question which we determine is whether it is such a regulation as violates the act of Congress. As well might it be contended that any contract made by a national bank within a state, in violation of the state laws on the subject of minority or coverture, was valid because state laws were in conflict with the act of Congress, or impaired the power of the bank to perform its functions."

V. In this State the banking business can be conducted only by a corporation. Thus organized, the extent

of its powers must, as we have said, be determined by the statute of its creation. The state banking act gives express recognition to this rule in providing that banks, whether incorporated under Federal or State law, can transact only such business as is permitted by the laws of the United States or of the State. [Sec. 11684, R. S. 1919.] Branch banks, not having been permitted by the state law either by express terms or necessary implication, the well recognized canon of construction will authorize the exclusion of this power from those granted. Reliance upon this rule is, however, unnecessary in the presence of a subsequent section (Sec. 11737, R. S. 1919) in which it is provided "that no bank shall maintain in this State a branch bank or receive deposits or pay checks except in its own banking house." The attempt, therefore, of the respondent to establish a branch bank is not only an act in excess of its corporate powers, but in violation of an express statute.

<span style="margin">Quo Warranto by Attorney-General.</span>

The writ of *quo warranto* invoked by the relator is a recognized right and an appropriate remedy under the circumstances. [State ex inf. Attorney-General v. Standard Oil Co., 218 Mo. 1.] Upon an appeal to the Supreme Court of the United States in the Standard Oil Case that court held (224 U. S. 270) that the proceeding by *quo warranto* which had been instituted in the State Supreme Court in that case by the Attorney-General was authorized. Discussing the powers of the Missouri Supreme Court in the premises it was held that: "Its decision and judgment necessarily imply that under that clause of the Constitution it had jurisdiction of the subject-matter and authority to enter judgment of ouster and fine in civil *quo warranto* proceedings. That ruling is conclusive upon us, regardless of whether the judgment is civil or criminal, or both combined."

VI. The right of the Attorney-General to institute this action having been established, the question arises,

**Jurisdiction.** although it does not seem to be seriously contested, as to the tribunal in which it should be brought.

The 16th subdivision of Section 24 of the National Judicial Code provides, among other things, that the United States district courts have original jurisdiction "'of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank; and of all suits brought by any banking association established in the district for which the court is held, under the provisions of title 'National Banks,' Revised Statutes, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by said title. And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located.''

The United States statutes further provide that national banks shall have power "to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons." [U. S. R. S. sec. 5136; 4 U. S. Comp. Stats., 1913, sec. 9661.]

Under Section 9759, 4 Comp. Stat. p. 4458, 6 Fed. Stat. Ann. p. 928, prescribing where suits may be brought against national banks it is provided "that suits, actions and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

Under the proviso of an Act of Congress approved July 12, 1882 (4 U. S. Comp. Stat. 1913, sec. 9668), it is further provided "that the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associa-

tions, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do a banking business where such national banking association may be doing business when such suits may be begun; and all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed."

From the foregoing it will be seen that, as this case does not fall within the inhibitions of the Federal statutes quoted, jurisdiction of same may be entertained by this court.

In Herrmann v. Edwards, 238 U. S. 107, the United States Supreme Court construed subdivision 16 of Section 24 of the National Code and held, as it must have held within the unmistakable meaning of said subdivision, that state courts were clothed with jurisdiction to hear and determine all cases against national banks except those exempted under said subdivision. The case at bar does not fall within those exemptions.

This is not a proceeding to deprive the respondent of any right or limit the exercise of any power conferred upon it by the laws of the United States; but to prevent it from committing an act in violation, under the established rules of construction, of the laws of its creation and expressly contravening a state statute.

The character of a judgment in *quo warranto* cases is largely within the discretion of the court and foreign corporations may, under numerous precedents, be prohibited by a general ouster from committing particular illegal acts. [State ex inf. Attorney-General v. Standard Oil Co., 218 Mo. 1; State ex inf. Attorney-General v. Standard Oil Co., 194 Mo. l. c. 149; State ex inf. Attorney-General v. Armour Packing Co., 173 Mo. l. c. 366; State ex inf. Attorney-General v. Firemen's Fund Ins. Co., 152 Mo. 1; State ex inf. Attorney-General v. Arkansas Lbr. Co., 190 S. W. (Mo.) 894.]

In view of all of the foregoing, judgment of ouster as prayed in the pleadings is hereby ordered. All concur, except *Ragland, J.,* not sitting.