425 P.2d 414

The FIRST NATIONAL BANK OF LOGAN, of Logan, Utah, a National Banking Corporation, Plaintiff and Appellant,

v.

WALKER BANK AND TRUST COMPANY, a corporation, Defendant and Respondent.

No. 10621.

Supreme Court of Utah.

March 20, 1967.

Perry & Perry, Theodore S. Perry, Logan, for appellant.

Joseph S. Jones, Ray, Rawlins, Jones & Henderson, W. Robert Wright, Salt Lake City, for respondent.

CROFT, District Judge: .

This is an appeal by plaintiff below from a judgment rendered in favor of defendant and against the plaintiff dismissing the action with prejudice and on the merits.

Appellant First National Bank of Logan commenced this action against respondent, Walker Bank and Trust Company, in the District Court in and for Cache County, State of Utah, seeking:

(1) A declaratory judgment that the construction of certain new banking facilities by respondent in Logan, Utah, was in violation of Section 7–3–6, UCA 1953, as amended, and (2) an injunction restraining respondent from operating these new banking facilities. By its complaint, appellant contended that the construction and operation of the new banking facilities by respondent constituted the establishment of a "branch bank" within the meaning of that term as used in said Section 7–3–6, and that such construction and operation is in violation of, and prohibited by, the said statute. The case was tried by the court, and the court concluded that the construction and operation of the banking facilities in question did not constitute the establishment of a "branch bank" within the meaning of Section 7–3–6, and so dismissed the action.

The pertinent facts as contained in the record may be summarized as follows:

Appellant is a National Banking Association with its main office located at the southwest corner of the intersection of First North and Main Streets in Logan, Utah. Respondent is a state bank with its main office located in Salt Lake City, Utah, and a branch bank in Logan, known as the Cache Valley Branch, which branch bank is located on the northwest corner of the same intersection. The appellant's bank is the only unit bank in Logan. The respondent acquired its Cache Valley Branch bank on December 18, 1956, by a statutory merger whereby the Cache Valley Banking

Company was merged with, and into, the respondent bank.

At the time of the merger, respondent did not acquire the ownership of the real property on which the banking business of the Cache Valley Branch was then conducted, and at that time the banking facilities occupied the west ninety feet of the building. The east thirty feet of the building was then occupied by the Utah Mortgage Loan Company.

A twelve foot right of way extends northward from First North Street along the east wall of the building and is contiguous thereto, over which business properties to the north of the bank building hold long established easements.

In December, 1964, respondent purchased the entire bank building property. It also acquired the fee simple title in and to the twelve foot right of way, subject to the easements therein, and to the parcel of land along First North Street lying to the east of, and contiguous to, the right of way. Upon acquiring the property, respondent undertook to remodel the bank building and Utah Mortgage and Loan Company, although still a tenant of the east thirty feet of the building at the time appellant commenced its action, has now vacated the premises and respondent bank now occupies the entire ground floor of the building.

Upon acquiring the land east of the building, respondent constructed two small buildings (each approximately 8′ X 22′) for use as drive-in and walk-up facilities for banking purposes. Each of the two buildings is a separate structure and neither is physically attached to the bank building, except for pneumatic tubes which run underground from the two buildings to the first teller's cage in the main building. A single canopy was constructed over both of the small buildings. The buildings were erected in such a manner as to accommodate both drive-in and walk-up customers. The most westerly of these two structures is 14½ feet east of the east wall of the main building and the two new structures are themselves about 15 feet apart. The street address of the new facilities is 35 East First North Street, and the address of the main banking facility is 102 North Main Street.

Each of the two separate buildings is used for the receiving and withdrawal of deposits and for cashing checks for respondent's customers. Deposits made in either facility, together with the deposit slips, are transmitted through the pneumatic tubes to the first teller's cage in the main building. Funds needed and used in either facility for paying withdrawals and cashing checks are sent from the first teller's cage through the tubes to such facility.

Under the statutes of Utah, Logan is a city of the second class. Neither the Utah State Banking Commissioner nor the Board of Governors of the Federal Reserve System has granted any authority to respondent

to erect or to operate the new drive-in, walk-up facilities.

Appellant contends that these facilities constitute a "branch bank," as that term is defined by Section 7–3–6, UCA 1953, as amended, and that their establishment and operation are contrary to, and prohibited by, that statute. Respondent contends that the new facilities are merely an extension or enlargement of its already existing branch bank.

The pertinent parts of Section 7–3–6 read as follows:

The business of every bank shall be conducted only at its banking house and every bank shall receive deposits and pay checks only at its banking house except as hereinafter provided.

        *     *     *     *     *     *

Except in cities of the first class, * * no branch bank shall be established in any city or town in which is located a bank or banks, state or national, regularly transacting a customary banking business, unless the bank seeking to establish such bank shall take over an existing bank. * * * The term "branch" as used in this act shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business at which deposits are received or checks paid or money lent.

The question for our determination is whether the construction and operation by respondent of the new drive-in, walk-up facilities in question constitute the establishment of a branch bank.

In 1953, our Legislature enacted legislation that legalized all existing unit banks and all branch banks then existing, the legality of whose prior establishment apparently was then open to question. However, in doing so, the Legislature reaffirmed the statutory limitations for, and the prohibitions against, the establishment of branch banks as contained in Section 7–3–6 [1] This legislative reaffirmance of Section 7–3–6 by a separate statute leaves no doubt that the Legislature intended that branch banks in cities of the second class, of which Logan is one, be established only in the the manner set forth in the statute.

The statutory definition of the term "branch" includes any place of business at which deposits are received, *or* at which checks are paid, *or* at which money is lent. Clearly, then, to constitute a place of business as a "branch bank" it is not necessary that a complete banking operation be conducted. It is sufficient if only such limited banking functions are performed. The respondent's drive-in, walk-up facilities were constructed for the purpose of receiving deposits and paying checks for banking customers and are so operated today. Standing alone, it can be said that the performance of such services as these in a place of busi-

---

1. Sec. 7–3–6.3, U.C.A.1953, as amended.

ness would constitute that place of business a "branch." But the answer to the question here involved does not turn upon the nature of the services rendered by the drive-in, walk-up facilities here involved. Rather, we must determine whether these facilities do, in fact, constitute a branch bank, office, agency, place of business or additional office, or are they merely an enlargement of an already existing "branch bank."

Appellant contends that since such drive-in, walk-up facilities are not expressly authorized by the statute, they are prohibited and that the Legislature, not the courts, must resolve the problem. In support of this contention, appellant cites Walker Bank & Trust Co. v. Taylor, 15 Utah 2d 234, 390 P.2d 592, wherein this court said:

We are of the opinion that our statute (Section 7–3–6) is restrictive and, what it does not expressly permit, it prohibits.

In that case the Utah State Banking Commissioner had entered an order granting the State Bank of Provo, a unit bank, the right to establish a branch bank in the city of Provo. The trial court had ruled that the order of the commissioner was illegal and void. This court affirmed, holding that under the statute the only way a branch bank could be established in Provo, a city of the second class, was by taking over an existing unit bank. It was therein contended by the State Bank of Provo that the statute did not expressly prohibit branching under the circumstances there involved, and that, therefore, the granting of such a privilege was permissive within the discretion of the commissioner. This court rejected that contention, taking the position, as already noted, that the statute is restrictive and prohibits what it does not expressly permit. Appellant contends that the statute, being thus restrictive, prohibits the installation of such facilities as here involved.

Should the restrictive force of the statute be so extended? We think not. To do so could unnecessarily restrict the growth of an existing banking facility. The fact that the statute does not expressly authorize improvement in banking facilities should not prohibit improvement. Certainly, it was not within the legislative intent that a banking establishment be denied an enlargement of its "banking house" to meet increased business needs. The legislative purpose in prohibiting the establishment of branches by banks except in conformity with the statute is not defeated by modernization programs. The difficulty lies in determining where expansion ends and branching begins.

The statutory description of the term "branch" does not resolve the difficulty. It does not define the term. It merely states that it "shall be held to include" any branch, bank, office, agency, additional office or place of business "at which deposits are received or checks paid or money lent." (Section 7–3–6, U.C.A.1953, as amended.) How-

ever, we believe the statute as written reasonably contemplates a branch facility physically separate and apart from the "banking house" at which it conducts its banking business. No concrete test comes to mind that could be given to cover all situations. We believe it necessary to examine the facts and circumstances of each case individually. Whether a facility in question is, or is not, a drive-in, walk-up type of facility is not determinative of the issue. Any attempt to define additional banking facilities as not being "branches" if they are established within any given radius of the "banking house" is met with a variety of problems. No single factor impresses us as being controlling.

As was stated in Jackson v. First National Bank of Valdosta, 246 F.Supp. 134, U.S. D.C., M.D. Georgia, Valdosta Division (1965), there is a paucity of authority on the question presented in this case. In that case the Georgia Federal District Court had under consideration the definition of "branch" as found in 12 U.S.C.A. § 36(f), which reads as follows:

(f) The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business * * * at which deposits are received, or checks paid, or money lent.

This provision is identical to that used in Section 7–3–6, U.C.A.1953. In the Jackson case, the court was called upon to decide whether or not the defendant's "drive-in facility," the rear wall of which was 290.-57 feet from the rear wall of the main banking house, and which customarily cashed checks and received deposits, was a "branch" as defined in 12 U.S.C.A. § 36 (f), and so within the proscription of the statute. In holding that the "drive-in facility" was a "branch" within the statutory meaning of the term, that court stated:

The patent meaning of this part of the statute is that an "additional office" or "branch place of business" will be considered a "branch" for purposes of § 36 if any one of the three specified conditions is met, i. e., if deposits are received or checks are paid or money is lent.

We agree with this conclusion of the meaning of the statute, but the Federal Court in the Jackson case, in rejecting the argument of the defendant in that case that the drive-in facility was merely "an expansion of an existing facility," stated:

Several factors compel rejection of that approach in this case. These factors fall roughly into four categories: (1) the distance separating the main banking house and the "drive-in-facility", (2) the number of intervening structures, (3) the lack of physical connection between the main banking house and the "drive-in-facility", and (4) the economic effect of the "drive-in-facility" on the balance of

competition between the plaintiff bank and defendant bank.

In considering these factors, the Georgia Federal Court noted that 290.57 feet separated the two facilities; that an alley and 10 buildings containing businesses intervened between the main banking house and the "drive-in facility"; that there was no physical connection (other than the telephone) between the two buildings; and that without the "drive-in facility" the defendant bank would lose customers while with it, it had gained customers. That court specifically rejected a "unity of operation" concept asserted by the bank under the facts existing in that case.

In regard to the presence or absence of a pneumatic tube between the two buildings, that court noted:

> While the presence or absence of a pneumatic tube is perhaps a relevant factor for consideration, the absence of such a tube is not a controlling fact in the case sub judice.

Appellant in its brief cites State ex rel. Barrett v. First National Bank, 297 Mo. 397, 249 S.W. 619, 30 A.L.R. 918, affirmed 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 as denying the First National Bank "the right to have windows at separate locations." The brief states as a fact that "The First National Bank of St. Louis opened a teller window near its main office." A careful review of the opinion of the Missouri Supreme Court in that case discloses no such factual data. The only factual comment noted in the opinion is to the effect that "This is an original proceeding in quo warranto to determine the authority of a national bank engaged in business in the city of St. Louis to establish and conduct a branch bank at another than its regular place of business in said city." The United States Supreme Court in its opinion on review stated that the factual averment in the pleadings was that the First National Bank had opened and was operating "a branch bank for doing a general banking business in a separate building several blocks from its banking house, and proposes to open additional branch banks at various other locations." The holding of the Missouri Supreme Court, upheld by the United States Supreme Court, was that under the Missouri statute (which provided "[t]hat no bank shall maintain in this state a branch bank or receive deposits or pay checks except in its own banking house") the establishment of the branch bank by the First National Bank of St. Louis was void and contrary to law. The case did not involve "a teller window" nor a drive-in facility. It involved the establishment of a branch bank with general banking business several blocks away from the main bank, and is hardly in point here.

Appellant also suggests in its brief that the ruling in Continental Bank & Trust Co. v. Taylor, 14 Utah 2d 370, 384 P.2d 796,

constitutes a definite rejection of the rulings of the Kentucky Court of Appeals in Marvin v. Kentucky Title Trust Co., 218 Ky. 135, 291 S.W. 17, 50 A.L.R. 1337, and of the Texas Court of Civil Appeals in Great Plains Life Insurance Co. v. First National Bank, 316 S.W.2d 98. In the former case, no statute defining "branch," as does ours, was there involved, and the Kentucky Court there held that since the bank offices established in various parts of the city could not "loan money or invest the banking funds," they were not branch banks carrying on the same business as the parent institution and so were not prohibited. In the Great Plains case the Texas Court based its decision on its understanding that " * * * a branch bank * * * is a separate entity and deposits made in a branch bank are payable there and only there * * *," adding that "Branch banks are not mere tellers' windows," and also that the drive-in depository was nothing more than a part of the appellee bank. The Texas statutes, Vernon's Ann.St.Const. art. 16, § 16; Vernon's Ann.Civ.St. art. 342–903, there involved provided that a bank chartered under the laws of that state "shall not be authorized to engage in business at more than one place which shall be designated in its charter," and also that "[n]o state, national, or private bank shall engage in business in more than one place, maintain any branch office, or cash checks or receive deposits except in its own banking house." Whether the Texas court closed its eyes to the latter provisions of the statute in holding that the statutory prohibition was to a "branch bank" as therein described and not to places where checks were cashed or deposits received, we do not know or say. The facts in Continental Bank & Trust Co. v. Taylor, supra, were entirely different than the facts in the Kentucky and Texas cases, and appellant's conclusions as to the effect of this court's decision in Continental Bank & Trust Co. v. Taylor as rejecting the reasoning of the Kentucky and Texas courts in those cases hardly seems justified. Our ruling in the case at bar does not turn upon an agreement with the decisions of either the Texas case or the Kentucky case, for those cases are distinguishable on the facts as well as the statutory laws involved.

In the case at bar, we are in accord with the decision of the trial court that the drive-in, walk-up facilities constructed and now operated by respondent do not constitute a "branch" within the meaning of Section 7–3–6 of our code. Instead, we consider them to constitute only an enlargement of the existing branch banking facility of respondent. Among the factors we have taken into account in so holding are the following.

1. That the drive-in, walk-up facilities in question are constructed on property owned by respondent which is contiguous and immediately adjacent to the main banking house of respondent's Cache Valley Branch.

2. That no other building or place of business lies between the banking house and the drive-in, walk-up facilities.

3. That the new facilities are bounded on the north and the east by a parking lot owned by respondent and constructed for the use and convenience of its customers at its main banking house, as well as at the new facilities.

4. That deposits made in the drive-in, walk-up facilities, together with deposit slips, are transmitted through pneumatic tubes to the first teller's cage in the main building, and funds needed and used in the new facilities for paying withdrawals or cashing checks are sent from that cage through the tubes to either building.

5. That the two new buildings comprising the drive-in, walk-up facilities were constructed as close to the main bank building as the established right of way would reasonably permit.

These factors portray a single, integrated banking operation at a banking house, expanded in the manner described to accommodate customers coming to that same banking house. The statutory prohibition against the establishment of a branch bank in a manner other than provided for in the statute contemplates, we believe, the establishment of another banking facility, whether it be a "branch bank, branch office, branch agency, additional office, or any branch place of business," which is physically removed and located in another area, whether nearby or far away, from the banking house in question, and which is separated from it in such a way so as to not constitute a contiguous unit operation.

The judgment of the trial court is affirmed.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., does not participate herein.