**BANK OF LAUREL, LAUREL, MISSISSIPPI, Plaintiff,**

v.

**Robert BLOOM, Acting Comptroller of Currency and J. W. Shaffer, Regional Administrator, Defendants.**

**Civ. A. No. J76–383(C).**

United States District Court, S. D. Mississippi, Jackson Division.

Feb. 7, 1977.

W. O. Dillard, Jackson, Miss., for plaintiff.

Robert E. Hauberg, U.S. Atty., Jackson, Miss., for defendant.

WILLIAM HAROLD COX, District Judge.

The plaintiff instituted this suit against the defendants for injunctive relief and for a declaratory judgment. The plaintiff, as a bank in Laurel, is interested in establishing a branch bank in the city of Ellisville, which is approximately eight to ten miles away from Laurel. There is presently only one state bank in Ellisville.

On September 30, 1973, the Jones County State Bank filed an application with the

state comptroller for a unit bank at Ellisville. On March 31, 1976, the Bank of Laurel filed its application with the state comptroller for a permit to establish a branch bank at Ellisville. On September 17, 1976, the First National Bank in Laurel filed an application with the Comptroller of Currency to establish a branch bank at Ellisville. The president of the plaintiff bank did not think that the Comptroller had any power or authority under state law to issue such a permit while the applications were pending for a unit bank and a branch bank at Ellisville. That view was communicated to the Examiner and the president of the plaintiff bank asked the Examiner what the Comptroller would do about it. The Examiner stated that such position would not be considered one way or the other. He said: "They would proceed with their findings of First National's application with little thought or bearing on plaintiff's application."

■ The plaintiff under such circumstances, and in view of such peril instituted this suit and requested and obtained a temporary restraining order. That temporary restraining order has run its course and expired by the lapse of time, and the plaintiff now has before the Court an application for a temporary injunction in its stead. The federal law on this point in Banks and Banking clearly shows that this branch of the law is subservient to the state law.[1] The state statute on incorporating and organizing a bank requires the state comptroller to give prompt consideration to such application and make an examination of proposed articles and determine whether or not all requirements are met. Miss.Code 1972, § 81–3–13 among other things expressly provides: "During the time the cause is pending in the office of the state comptroller or before the banking board or the court, the state comptroller shall not issue a certificate to a subsequent applicant to incorporate and organize a new bank or authorize any bank then existing to establish a branch bank, or branch office within the area wherein the proposed new bank is to be domiciled and neither shall he consent to the removal of the domicile of an existing bank from another place into the area where the proposed new bank will be domiciled."

The history of this legislation is rather extensive since 1927 and the friends and foes of banking legislation have expressed themselves freely before passage of this act. A full discussion of the various contentions

---

1. 12 U.S.C. § 36(c) as amended September 28, 1962 provides how new branch banks are to be established within the limits of any city. Said section as amended provides: "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. In any State in which State banks are permitted by statute law to maintain branches within county or greater limits, if no bank is located and doing business in the place where the proposed agency is to be located, any national banking association situated in such State may, with the approval of the Comptroller of the Currency, establish and operate, without regard to the capital requirements of this section, a seasonal agency in any resort community within the limits of the county in which the main office of such association is located, for the purpose of receiving and paying out deposits, issuing and cashing checks and drafts, and doing business incident thereto: Provided, That any permit issued under this sentence shall be revoked upon the opening of a State or national bank in such community. Except as provided in the immediately preceding sentence, no such association shall establish a branch outside of the city, town, or village in which it is situated unless it has a combined capital stock and surplus equal to the combined amount of capital stock and surplus, if any, required by the law of the State in which such association is situated for the establishment of such branches by State banks, or, if the law of such State requires only a minimum capital stock for the establishment of such branches by State banks, unless such association has not less than an equal amount of capital stock."

as to branch banks as distinguished from unit banks is discussed by the Court. This controversy, however, arises only over the establishment of a branch bank in an adjoining city which would do violence to the business and property rights of the plaintiff and be in flagrant violation of Mississippi law.[2]

The complaint in this case is sworn to be true and correct in substance and in fact. The complaint shows that it has no way to prevent the federal comptroller from conducting hearings and approving the application before him, even though in violation of state law, and that it would suffer irreparable loss and injury by his granting such relief to First National Bank under such circumstances although there is much conflict in the authorities. The District of Columbia Circuit provides us with a very fine opinion on this subject in *First National Bank of Fairbanks v. William B. Camp, Comptroller of the Currency of the United States, et al.,* 151 U.S.App.D.C. 1, 465 F.2d 586, cert. denied 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 where among other things the Court said: "However, where such a conflict is found, it makes no difference whether it is the state supervisor's or the Comptroller's opinion that is involved; a fair reading of the statute law of the state, as incorporated within the National Bank Act by Section 36(c), must determine whether or not branching is proper."

The Bank of Laurel is in competition with First National Bank in Laurel, and the city of Ellisville and its environs simply will not economically support the banks in such a relatively small trade territory. The plaintiff has standing to sue in this Court under 28 U.S.C.A. § 1337 as a matter affecting trade and commerce between such banks as competitors; and Title 28 U.S.C.A.

§ 1331(a) which confers jurisdiction on this Court in matters in controversy exceeding the value of $10,000 exclusive of interest and costs which arise under the Constitution and laws of the United States.

There has long been opposition to the exercise of federal power in the banking field. The paramount power of Congress over national banks has been settled for almost a century and a half. Competitive equality has been a watchword and the polestar for the construction and operation of the system. The Comptroller argued that state law was not applicable to national banks. The Court held in *National Bank of Detroit v. The Wayne Oakland Bank; Ray M. Gidney, Comptroller of the Currency v. The Wayne Oakland Bank,* (6 CA) 252 F.2d 537, 539: "We are of the opinion that, contrary to the contentions of the appellants, the Michigan statute (17 M.S.A. Section 23.762) is here controlling; that the limitation therein contained as to branch banks applies, not only to state banks, but to national banks as well; and that Title 12 U.S.C.A. Section 36, not only did not empower the Comptroller to establish a branch of the National Bank of Detroit in Troy, Michigan, subsequent to the establishment in that city of a branch of The Wayne Oakland Bank, but, by clear implication, prohibited him from doing so." And as to standing in *National Bank of Detroit v. The Wayne Oakland Bank,* supra, the Court said: "As to the standing of The Wayne Oakland Bank to maintain its suit, it was faced with invasion of property rights, and injury from a competition which was prohibited by the federal statutes subjecting national banks to the same rules of law as cover state banks."

The defendant contends that the plaintiff has not pursued all of its lines open to it for

---

2. *First National Bank of Logan, Utah v. Walker Bank & Trust Company,* 19 Utah 2d 18, 425 P.2d 414; *First Security Bank of Utah v. Commercial Security Bank; James J. Saxon, Comptroller of the Currency v. Commercial Security Bank,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343, rehearing denied 87 S.Ct. 497, holds: "It is a strange argument that permits one to pick and choose what portion of the law binds him.

Indeed, it would fly in the face of the legislative history not to hold that national branch banking is limited to those States the laws of which permit it, and even there 'only to the extent that the State laws permit branch banking.' Utah clearly permits it 'only to the extent' that the proposed branch takes over an existing bank."

relief before instituting this suit, and that the Comptroller may even ultimately decline the certificate, but that view is not consonant to the circumstance and contention confronting the plaintiff here who is summarily told that their predicament will not have any affect on the decision of the Comptroller. Accordingly, this suit followed. A similar situation with similar contentions was made before a trial judge in the District of Columbia who granted an injunction in *Commercial State Bank of Fraser v. Gidney, Comptroller,* 174 F.Supp. 770, affirmed by a per curiam opinion with Justice Burger on the panel in District of Columbia 278 F.2d 871.

Injunctive relief is necessary in a case of this kind to prevent irreparable injury. In *Swift & Co. v. United States,* 276 U.S. 311, 48 S.Ct. 311, 315, 72 L.Ed. 587, the Court said: "The argument ignores the fact that a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated. *Vicksburg Waterworks Co. v. Vicksburg,* 185 U.S. 65, 82, 22 S.Ct. 585, 46 L.Ed. 808; *Pierce v. Society of Sisters,* 268 U.S. 510, 536, 45 S.Ct. 571."

In *Vicksburg Waterworks Co. v. Mayor and Aldermen of the City of Vicksburg,* 185 U.S. 65, 22 S.Ct. 585, 592, 46 L.Ed. 808 the Court said: "It is further contended that the bill does not disclose any actual proceeding on the part of the city to displace complainant's rights under the contract, that mere apprehension that illegal action may be taken by the city cannot be the basis of enjoining such action, and that therefore the circuit court did right in dismissing the bill. We cannot accede to this contention. It is one often made in cases where bills in equity are filed to prevent anticipated and threatened action. But it is one of the most valuable features of equity jurisdiction, to anticipate and prevent a threatened injury, where the damages would be insufficient or irreparable. The exercise of such jurisdiction is for the benefit of both parties; in disclosing to the defendant that he is pro-

ceeding without warrant of law, and in protecting the complainant from injuries which, if inflicted, would be wholly destructive of his rights."

Much controversy has arisen to provoke judicial announcement on that question, but the Supreme Court of Mississippi in *Pitts v. Carothers, et al.,* 152 Miss. 694, 120 So. 830 at 832 provided an excellent definition of the term as follows: "An injury is irreparable when it cannot adequately be compensated in damages or where there exists no certain pecuniary standard for the measurement of the damages. Where the extent of the prospective injury is uncertain or doubtful so that it is impossible to ascertain the measure of just reparation, the injury is irreparable in a legal sense, so that an injunction will be granted to prevent such an injury. To render an injury irreparable it is not necessary that the pecuniary damage be shown to be great, but, on the contrary, the fact that in an action at law the jury could award only nominal damages often furnishes the very best reason for interference by a court of equity by injunction. See 32 C.J. pp. 53, 54, and the numerous cases there cited."

■ The Court is of the opinion under the facts and circumstances and fair inferences thereon that a temporary injunction should issue to the defendants under the same circumstances and conditions on which the temporary restraining order was granted. It is probable that the Comptroller may otherwise issue his permit to the First National Bank and thus do irreparable damage to the plaintiff which must be avoided. A writ of temporary injunction may issue by the Clerk of this Court to the defendants restraining them under penalty of law from issuing any such certificate during the pendency of this suit, and the $5,000 bond shall be and remain as sufficient security therefor in the hands of the Clerk of this Court.

An order accordingly may be prepared by counsel for the plaintiff and presented to the Court within five days under the rules of this Court.