The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following question: Is a banking facility operated at a noncontiguous location which is joined to the main bank building only by electric wires affording direct visual and audio communications an attached facility within the meaning of 6 O.S. 415 [6-415](A) (1971)? Branch banking is prohibited in the State of Oklahoma. 6 O.S. 501 [6-501] (1976). An exception is made, however, of facilities maintained and operated pursuant to 6 O.S. 415 [6-415](A) (1971). A bank may maintain and operate outside attached facilities and one detached facility on property owned or leased by the bank located less than one thousand (1,000) feet from the center of the street abutting the bank's main building. Both the prohibition of 6 O.S. 501 [6-501] and the statutes qualifying it, 6 O.S. 415 [6-415], 6 O.S. 421 [6-421] and 6 O.S. 422 [6-422], are applicable to national banks. In Jackson v. First National Bank of Valdosta, 246 F. Supp. 134
(M.D. Ga. 1965), the Court rejected the arguments of the Comptroller of the Currency that a drive-in and the main banking facilities were under a "unity of operation", stating: ". . . This court feels that the concept of 'unity of operation' is too pliable and amorphous to be accepted here in support of the position that the disputed 'branch' apparently covered under 36(f) is really not a 'branch' but is in effect an 'expansion of an existing facility' . . ." 246 F. Supp. 193. A pneumatic tube represents a "physical connection which the Court discussed as an aspect of the "unity of operation" concept. The Court noted that the presence or absence of a pneumatic tube "is perhaps a relevant factor for consideration," but was not before the Court in that case. 246 F. Supp. 140. Reference to a physical connection as a mere "relevant factor for consideration" suggests that it is a factor which is far from dispositive. Its absence does not render a facility detached, and its presence does not, without more, render a facility attached. Physical connection is one of four non-exhaustive factors which the Court considered in reaching a determination of whether an existing facility constituted a "branch." They were: ". . . (1) the distance separating the main banking house and the 'drive-in-facility', (2) the number of intervening structures, (3) the lack of physical connection between the main banking house and the 'drive-in-facility', and (4) the economic effect of the 'drive-in-facility' on the balance of competition between the plaintiff bank and defendant bank . . . ." 246 F. Supp. 139. The Court pointed out that a distance of 290.67 feet separated the rear wall of the main bank building from the rear wall of the drive-in structure, and ". . . there are ten (10) buildings containing business and an alley all of which intervene between the main banking house and the 'drive-in facility' . . . ." 246 F. Supp. 134. The drive-in facility was held to be not merely an "expansion of an existing facility" but was a "branch" as defined in12 U.S.C.A. 36(f). In North Davis Bank v. First National Bank of Lawton, 457 F.2d 820 (10th Cir. 1972), a state bank sought to enjoin a national bank from completing construction of a drive-in banking facility across the street from the main bank office. The proposed drive-in facility was to be about 100 feet away from the main bank office and across a street 66 feet wide. The drive-in was to be connected with the main office by pneumatic tubes with no structures intervening between the drive-in facility and the bank proper. The drive-in and the main bank were to comprise "a unity of operation", and the window extensions were to be used to provide: ". . . a service necessitated by the increasing demand to ac commodate customers who arrive at the bank in automobiles." 457 F.2d 824. The Court adjudicated the undisputed facts on the basis of a holding of the Supreme Court of Utah in First National Bank of Logan v. Walker Bank and Trust Co., 425 P.2d 414 (Utah 1967). The position of the Tenth Circuit suggests that, even though what constitutes a branch bank is a question of federal law, at least that Circuit will look to state law in applying the factors cited in Jackson v. First National Bank of Valdosta, supra. The Court reasoned: "There is no fixed test for determining what constitutes a branch bank . . . Each case must be considered on its own facts. In this case it is disclosed that the proposed facility is an integral operating part of the bank proper. The outside drive-in teller's window is nothing more than an enlargement of existing facilities for the convenience of customers in conducting banking business, and does not constitute 'a separate branch bank, branch office, branch agency, additional office or branch place of doing business.' 12 U.S.C.A. 36(f). It affords no competitive advantage as apparently such arrangements are not prohibited by Utah law. The Supreme Court of Utah in First National Bank of Logan v. Walker Bank and Trust Co.,19 Utah 2d 18, 425 P.2d 414 (1967), in considering a Utah statute similar to 12 U.S.C.A. 36(f), stated in a like situation that the totality of facts 'portrays a single, integrated banking operation at a banking house, expanded in the manner described to accommodate customers coming to that same banking house.' " 457 F.2d 824. The Court affirmed the action of the District Court dismissing the action. In Dunn v. First National Bank of Cartersville,345 F. Supp. 853 (N.D. Ga. 1972), the state superintendent of banks sought an injunction against a national bank upon the following allegations: The national bank was maintaining an installment loan building across the street from its main bank for the purpose of opening and processing installment loan accounts. The only physical connection between the installment loan building and the main bank were "telephone lines and an underground pneumatic tube." 345 F. Supp. 854. The Court compared the factual record before it with the findings entered in Jackson v. First National Bank of Valdosta, supra.345 F. Supp. 856. Applying the four factors established by that case, the Court concluded: ". . . the Court finds as a matter of law that the `installment loan building' does not constitute a branch bank as contemplated by12 U.S.C.A. 36(f). This decision is not intended to establish precedence for expanding the concept of branch banking, but is decided only upon the principle that every case is factually different and must be disposed of only after a full and complete consideration of all relevant factors."345 F. Supp. 857. Commonwealth of Virginia, ex rel. State Corporation Commission v. Farmers and Merchants National Bank, 380 F. Supp. 568 (W.D. Va. 1974), added to the four factors reflected in Jackson v. First National Bank of Valdosta, supra, two additional factors: "(1) whether it was feasible for an existing bank office to physically attach the drive-in windows to the existing office, and (2) whether the freestanding facility could have been constructed closer to the existing bank office."380 F. Supp. 574. The action was brought to enjoin the operation of a drive-in facility approximately 200 feet from an existing branch office. The Court continued: ". . . no single factor impresses this court as controlling; nor do any hard and fast rules concerning such factors as distance of separation recommend themselves. Only after considering all of the relevant factors and circumstances peculiar to this case has this court determined that the defendant's drive-in facility does not constitute a 'branch.' " 380 F. Supp. 574. Emphasis added It is, therefore, the official opinion of the Attorney General that no single factor is controlling with respect to whether a facility operated at a non-contiguous location is an attached facility within the meaning of 6 O.S. 415 [6-415](A) (1971), but all of the factors considered in the cases are relevant thereto. Electric wires affording direct visual and audio communications do not in and of themselves render a facility attached within the meaning of that statute. (JOHN PAUL JOHNSON) (ksg)